O

# United States District Court
# Central District of California

| | |
|---|---|
| NNG, KFT.,<br><br>     Plaintiff,<br><br>  v.<br><br>AVA ENTERPRISES, INC., d/b/a BOSS AUDIO SYSTEMS,<br><br>     Defendant. | Case No. 2:14-cv-00220-ODW(AJW)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS [46]** |

## I. INTRODUCTION

Pending before the Court is Defendant AVA Enterprises, Inc.'s ("AVA") Motion to Dismiss. (ECF No. 46.) AVA seeks dismissal of four of the eight causes of action in Plaintiff NNG, Kft.'s ("NNG") First Amended Complaint (ECF No. 40 ["FAC"]). This dispute involves copyrighted navigation software used in entertainment hardware for automobiles. For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** AVA's Motion.[1]

## II. FACTUAL BACKGROUND

NNG, a Hungarian corporation, manufactures and distributes navigation software. (FAC ¶ 11.) NNG owns several U.S. copyright registrations for various

---

[1] After carefully considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; L.R. 7-15.

versions of its "iGo Primo" software. (*Id.* ¶ 13.) The software is commonly used in automobile and personal navigation systems and is licensed to more than 150 hardware manufacturers worldwide. (*Id.* ¶ 1.) NNG employs certain procedures to protect the software from unauthorized use. An approved licensee is authorized to download the software and a customized "license pool" which the licensee then unlocks with a unique identification number provided by NNG. (*Id.* ¶ 15.) One specific section of computer code in the software is specifically designed to read the identification number and verify the authenticity of the installed software (the "Authentication Code"). (*Id.* ¶ 23.)

AVA, a California corporation, manufactures and distributes automotive audio and entertainment products such as aftermarket hardware for vehicle dashboards. (*Id.* ¶ 22.) AVA's hardware often contains navigation software. (*Id.*) Despite not having a license or authorization, AVA allegedly manufactured and distributed two automobile entertainment devices that contain pirated versions NNG's navigation software: the Boss Audio BV9380NV unit and the Boss Audio BV9370NV unit (hereinafter the "Infringing Units"). (*Id.*) The pirated versions of NNG's software allegedly lack the Authentication Code thus allowing an unlimited number of devices to utilize NNG's software. (*Id.* ¶ 27.) NNG alleges that AVA "or its agent" developed code that "overrides and/or gets around NNG's [Authentication Code]." (*Id.* ¶ 55.)

Not only do the Infringing Units utilize pirated versions of NNG's software, but they allegedly display the trademarked "iGo" mark on a "splash page" when a consumer activates the navigation features on the devices. (*Id.* ¶ 28.) NNG alleges that consumers are "extremely likely to assume, incorrectly, that the Infringing Units use authentic navigation software from NNG." (*Id.* ¶ 32.)

NNG's First Amended Complaint, filed on March 17, 2015, raises eight causes of action: (1) Lanham Act copyright infringement, 17 U.S.C. § 501; (2) violations of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1201; (3) Lanham Act

trademark counterfeiting, 15 U.S.C. §§ 1114, 1116(d)(1), and 1117; (4) Lanham Act trademark infringement, 15 U.S.C. § 1114; (5) Lanham Act unfair competition, 15 U.S.C. § 1125(a); (6) a violation of California's unfair competition law, Cal. Bus. & Prof Code § 17200; (7) common law trademark infringement; and (8) common law unfair competition. (ECF No. 40.) AVA filed the pending Motion to Dismiss on April 14, 2015, and seeks dismissal of NNG's second, third, fourth, and fifth causes of action under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 36.)

### III. LEGAL STANDARD

Pursuant to Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleading in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Nonetheless, the Court need not accept as true allegations contradicted by judicially noticeable facts, and the "court may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one of summary judgment. *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). The Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (internal quotation marks and citations omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to

/ / /

dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004) (internal quotation marks and citations omitted).

## IV. DISCUSSION

AVA does not seek a dismissal of the entire First Amended Complaint, but only NNG's causes of action under the DMCA, Lanham Act counterfeiting, Lanham Act trademark infringement, and Lanham Act unfair competition. As discussed below, AVA correctly argues that NNG failed to state claim for two theories of liability under the DCMA and for Lanham Act trademark counterfeiting. However, the rest of AVA's challenges to the First Amended Complaint are unfounded.

### A. Second Cause of Action: Violation of DMCA

"Through the DMCA, Congress sought to prohibit certain efforts to unlawfully circumvent technologies, while at the same time preserving users' rights of fair use." *United States v. Elcom Ltd.*, 203 F. Supp. 2d 1111, 1119 (N.D. Cal. 2002). The DMCA contains three separate provisions that prohibit the circumvention of technological measures. First, 17 U.S.C. § 1201(a)(1)(A) "is a general prohibition against 'circumventing a technological measure that effectively controls access to a work protected under [the Copyright Act].'" *MDY Indus., LLC v. Blizzard Entm't, Inc.*, 629 F.3d 928, 942 (9th Cir. 2010) *opinion amended and superseded on denial of reh'g*, 09-15932, 2011 WL 538748 (9th Cir. Feb. 17, 2011) (quoting 17 U.S.C. § 1201(a)(1)(A)). Second, § 1201(a)(2) "prohibits trafficking in technology that circumvents a technological measure that 'effectively controls access' to a copyrighted work." *Id.* (quoting 17 U.S.C. § 1201(a)(2)). These first two provisions protect the same basic rights by "prohibit[ing] the circumvention of any technological measure that effectively controls access to a protected work and grant[ing] copyright owners the right to enforce the prohibition." *Id.* at 944. The third provision, § 1201(b), "prohibits trafficking in technology that circumvents a technological measure that 'effectively protects' a copyright owner's right." *Id.* at 942 (quoting 17 U.S.C. § 1201(b)(1)).

The FAC alleges violations of the three provisions in the DMCA. (FAC ¶¶ 53–67.) AVA argues that all three theories of liability under the DMCA fail as a matter of law because (1) AVA did not commit any acts of circumvention, (2) NNG failed to utilize effective access control measures, and (3) the trafficked devices do not conduct the circumvention themselves. (Mot. 7.)

### 1.  Acts of Circumvention are Properly Alleged.

AVA first argues "the FAC *nowhere* alleges that *AVA* descrambled, decrypted or otherwise circumvented NNG's claimed protection measure." (*Id.* [emphasis original].) "Circumvention," as used in the DMCA, means "to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner." 17 U.S.C. § 1201(a)(3)(A). AVA's argument is patently incorrect. In Paragraph 55 of the First Amended Complaint, NNG clearly alleges that "[AVA d/b/a/] Boss Audio or its agent has illegally circumvented Plaintiff's technological copyright protection measures that control access to the Copyrighted Work by developing code . . . that allows the Copyrighted Work to run on a non-approved device." (FAC ¶ 55.) This allegation unquestionably identifies AVA as the party that bypassed or circumvented security measures and describes what actions AVA undertook to pull it off.

In its Reply, AVA argues that NNG's "Boss Audio or its agent" allegation "is too generic and conclusory to survive a 12(b)(6) motion." (Reply 4.) The Court disagrees. The allegation is not generic at all—it specifically states that AVA committed the wrongdoing. AVA insists that a third-party circumvented NNG's technology measures, but at this stage in the litigation the Court must accept the allegations in the First Amended Complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *See Twombly*, 550 U.S. at 555; *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). The Court therefore rejects AVA's claim that acts of circumvention are not properly alleged.

### 2. Effective Control Measures are Properly Alleged Under § 1201(a)(1).

AVA argues that NNG failed to allege that its software includes a measure that "effectively controls access" to its navigation software under § 1201(a)(1). (Mot. 10.) "[A] technological measure 'effectively controls access to a work' if the measure, in the ordinary course of operation, requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." 17 U.S.C. § 1201(a)(3)(B). The work at issue is NNG's navigation software. Software generally includes three distinct "elements" that are each protectable under copyright law: (1) the software's "literal elements" such as the actual source and object codes; (2) the software's "individual non-literal elements" such as discrete visual and audible components; and (3) the software's "dynamic non-literal elements" such as the real time experience and operation of the software. *MDY Indus.*, 629 F.3d at 942–42, 952–54. The Ninth Circuit has recognized all three of these elements within the DCMA context. *Id.*

According to AVA, NNG's Authentication Code "merely confirms whether the software is being run on an authorized device . . . [and] does *not* control access to the underlying software files or code." (Mot. 11 [emphasis original].) AVA contends that "NNG only asserts copyright protection in its software code (which is not protected by the license-checking procedure); it does *not* assert copyright protection over the experience of running the software program." (*Id.* [emphasis original].) Stated differently, AVA argues that NNG's Authentication Code only controls access to the navigation software's dynamic non-literal elements, and since NNG only brings copyright infringement claims for the literal and individual non-literal elements, the Authentication Code does not effectively "control access." AVA believes that the technological measure must control access to the elements of the work underlying the copyright infringement cause of action in order to state a claim under § 1201(a)(1). (*See* Reply 8–9 ["NNG argues that, because the mechanism protects against access to

///

the dynamic nonliteral elements, it is 'effective' for DMCA purposes. However, the dynamic nonliteral elements of the software are not at issue in this case."].)

AVA's position would be correct in other Circuits, but not here. In *MDY Industries*, the Ninth Circuit explained that a DCMA circumvention claim under § 1201(a) "creates a new anti-circumvention right distinct from the traditional exclusive rights of a copyright owner." *MDY Indus.*, 629 F.3d at 950. The court reasoned that since § 1201(a) does not "explicitly refer[] to traditional copyright infringement under [17 U.S.C.] § 106," the provision extends "a new form of protection, i.e., the right to prevent circumvention of access controls, broadly to works protected under Title 17, i.e., copyrighted works." *Id.* at 945. There is no requirement that the circumvention lead to infringement—an "infringement nexus"—because § 1201(a) merely "prohibits circumvention itself." *Id.* at 946, 952. *MDY Industries* explicitly rejected the rule from the Federal Circuit which required a plaintiff bringing a claim under § 1201(a) to demonstrate the "nexus to infringement." *Id.* at 949 (quoting *Chamberlain Group, Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1202 (Fed. Cir. 2004)).

AVA's argument is foreclosed by *MDY Industries*. It is undisputed that the technological measure in this case, the Authentication Code, effectively controls access to one element of NNG's copyrighted computer software—the dynamic non-literal elements. The fact that AVA did not allegedly infringe on copyrighted dynamic non-literal elements is of no consequence. Section 1201(a) "prohibits circumvention itself." *Id.* at 946. The Authentication Code prohibits an unauthorized user from accessing the dynamic non-literal elements of its navigation software, and NNG alleges that AVA bypassed this measure by removing the Authentication Code from the pirated software installed in the Infringing Units. (FAC ¶¶ 56–57.) While the dynamic non-literal elements might be irrelevant to every other claim in this case, this does not mean that NNG failed to state a claim under § 1201(a)(1)(A). The First Amended Complaint alleges that AVA circumvented a technological control measure

that effectively controls access to an element of NNG's work. Therefore, NNG properly stated a claim upon which relief can be granted under § 1201(a)(1)(A).

### 3. NNG Fails to Under § 1201(a)(2) Because There is No Trafficking of Devices that Conduct the Circumvention.

AVA also challenges NNG's theory of liability under § 1201(a)(2). AVA argues that to state a claim under § 1201(a)(2), the FAC "'must allege that [AVA] trafficked in a product or service that *enabled* the circumvention, *not access to what has already been obtained*.'" (Opp'n 14 [emphasis original] [quoting *Dish Network L.L.C. v. World Cable, Inc.*, 893 F. Supp. 2d 452, 467 (E.D.N.Y. 2012)].) According to AVA, § 1201(a)(2) only applies to devices that "actually perform[] the circumvention" and not those devices that merely "facilitated the distribution of unlawfully received copyrighted material." (*Id.* [quoting *Dish Network*, 893 F. Supp. 2d at 467].) AVA argues that the FAC fails to allege that the Infringing Units themselves actually performed the circumvention. (*Id.*)

AVA is correct. Section 1201(a)(2) provides: "No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part therefor, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title." 17 U.S.C. § 1201(a)(2). Under the plain language of § 1201(a)(2), the trafficked device must be "primarily designed or produced" to circumvent *and* it must actually do the circumventing itself. *See Dish Network*, 893 F. Supp. 2d at 467 ("Thus, as Congress made clear, the devices targeted under § 1201(a)(2) were not those that facilitated the distribution of unlawfully received copyrighted material, but rather those devices or services that actually performed the circumvention."); *Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 194, 319 (S.D.N.Y. 2000) ("Section 1201(a)(2) . . . separately bans offering or providing technology that may be used to circumvent technological means of

/ / /

controlling access to copyrighted works."); *Directv Inc. v. Little*, No. 03-cv-2407, 2004 WL 181153, *5 (N.D. Cal. Aug. 12, 1004).

AVA's Infringing Units are not primarily designed to circumvent any technological measure and do not conduct the actual circumventing. Customers do not buy the Infringing Units to then circumvent NNG's protectable software. The Infringing Units merely house the alleged pirated software to which "access . . . has already been obtained." *See Dish Network*, 893 F. Supp. 2d at 467. The Infringing Units merely "facilitate[] the distribution of unlawfully received copyrighted material" and therefore do not run afoul of § 1201(a)(2). *See id.*

NNG attempts to argue that AVA "developed a piece of code" that was embedded in NNG's navigation software and would "overrid[e] and/or get[] around [NNG's] technological measures." (Opp'n 14.) Thus, according to NNG, AVA's "piece of code" was then trafficked when AVA sold the infringing units. (*Id.*) This argument, however, fails to recognize the purpose of § 1201(a)(2)—to prevent the trafficking of devices that allow consumers to conduct the circumvention themselves. *See, e.g., Apple, Inc. v. Psystar Corp.*, 673 F. Supp. 2d 921, 941 (N.D. Cal. 2009) (finding a violation of § 1201(a)(2) when the defendant installed circumvention technology on computers and then sold the computers to allow customers to circumvent plaintiff's operating software); *Adobe Sys. Inc. v. Feather*, 895 F. Supp. 2d 297, 302 (D. Conn. 2012) ("In this case, the serial numbers and product keys marketed and distributed by [the defendant] were primarily designed and produced for the purpose of circumventing the activation and validation features of the plaintiffs' software in violation of section 1201(a)(2).") Consumers do not purchase the Infringing Units so that they can then circumvent NNG's navigation software, but instead purchase the Infringing Units to utilize the pirated software already installed. There is no allegation that this "piece of code" can be removed and then used by consumers to circumvent NNG's access control measures—the circumventing is complete before the infringing units are trafficked. Thus, NNG's theory of liability

under the § 1201(a)(2) of the DCMA fails to state a claim upon which relief can be granted.

### 4. NNG Fails to Properly Allege a Violation of § 1201(b) Because There is No Trafficking of Devices that Conduct the Circumvention.

AVA further challenges the NNG's alleged theory of DCMA liability under § 1201(b). "Section 1201(b)'s prohibition is thus aimed at circumventions of measures that protect the copyright itself: it entitles copyright owners to protect their existing exclusive rights under the Copyright Act. Those exclusive rights are reproduction, distribution, public performance, public display, and creation of derivative works." *MDY Indus.*, 629 F.3d at 944. In *MDY Industries*, the Ninth Circuit explained the difference between a claim under § 1201(a) and § 1201(b):

> A violation of § 1201(a)(1)(A), which prohibits circumvention itself, will not be a violation of § 1201(b), which does not contain an analogous prohibition on circumvention. A violation of § 1201(a)(2), which prohibits trafficking in devices that facilitate circumvention of *access* control measures, will not always be a violation of § 1201(b)(1), which prohibits trafficking in devices that facilitate circumvention of measures that protect against *copyright infringement*.

*Id.* at 946 (original emphasis).

Both § 1201(a)(2) and § 1201(b) require the device in question to actually perform the circumvention, whether that be the circumvention of an access control measure or a copyright infringement protection measure. *See Directv*, 2004 WL 181153 at *6 ("The same two elements necessary to establish a violation of § 1201(a)(2) must be shown to demonstrate a violation of § 1201(b)(1)."). As discussed *supra*, the Infringing Units were not primarily designed to circumvent—the alleged circumvention was already complete when the Infringing Units were shipped

to the customers. For the same reason NNG's theory of liability under § 1201(a)(2) fails, NNG's theory of liability under § 1201(b) also fails.

**B.     Third Cause of Action: Lanham Act Trademark Counterfeiting**

AVA argues that NNG failed to state a claim for trademark counterfeiting under the Lanham Act because NNG failed to allege that AVA used NNG's trademark in connection with the same goods for which the mark was registered. (Mot. 18.) According to the First Amended Complaint, AVA's customer would see NNG's iGo mark, Registration No. 3,883,494, "prominently" displayed on a "splash page" when "the navigation software on the Infringing Units is activated by a consumer." (FAC ¶ 32.) NNG's iGo mark is registered for "computer programs and software for use in fixed or handheld microcomputers enabling navigation by the use of global positioning systems." (FAC ¶ 18.)

To bring a claim for counterfeiting, the Lanham Act "requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 658 F.3d 936, 946 (9th Cir. 2011); *see also Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

For NNG to properly assert a claim for counterfeiting, the iGo mark would have to be registered for "the same goods to which the infringer applied the mark." *Louis Vuitton*, 658 F.3d at 946. AVA's Infringing Units allegedly display the mark on "automotive audio and entertainment products" when operating (FAC ¶ 22), yet NNG registered its mark for computer programs and software. While NNG's software is allegedly used within AVA's Infringing Units, this does not mean that an entertainment product is a "counterfeit" of a computer program. A consumer would not purchase an automobile accessory under the impression that it purchased a computer program. Without an allegation that AVA used NNG's mark on similar goods, NNG cannot state a claim for Lanham Act counterfeiting. *See* 5 J. Thomas

McCarthy, *McCarthy on Trademarks and Unfair Competition* § 25:15 (4th ed. 2015) ("The definition of 'counterfeit' reaches only cases in which the counterfeit mark is used in connection with the same goods or services as those for which the mark is registered on the Principal Register and is in use. Thus, if the mark REGIS is registered only for pens and pencils, while the trademark owner might well have a civil remedy against the unauthorized use of REGIS on writing paper, such a use is not a 'counterfeit.'").

## C. Fourth Cause of Action: Lanham Act Trademark Infringement

AVA's sole argument for why NNG's trademark infringement claim fails is there is no allegation that AVA used NNG's registered mark "in commerce." (Mot. 21.)

To prevail on a claim for trademark infringement, a holder of a registered mark must show that another party is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. 15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). A mark is "used in commerce" when the mark "is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then the documents associated with the goods or their sale." 15 U.S.C. § 1127.

AVA contends that the iGo trademark was not visible to any consumer purchasing one of the Infringing Units, and since the trademark does not appear to the customer "long after the point of sale, the marks were not used in commerce." (*Id.*) The Court rejects this argument for several reasons. First, the "in commerce" requirement is expansive. "The Lanham Act specifically defined 'commerce' as the maximum that Congress can regulate under the Constitution." *McCarthy on*

*Trademarks* § 25:15. "The commerce coverage of the Lanham Act has been characterized by the Supreme Court as a 'sweeping reach.'" *Id.* (citing *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952)). In addition to the expansive definition of "commerce," the Lanham Act defines "use" equally as expansively, prohibiting the placement of a mark "in *any* manner on the goods." 15 U.S.C. § 1127 (emphasis added). Here, AVA allegedly sold—"commerce"—the Infringing Units and the Infringing Units displayed NNG's trademark during operation—"use" in any manner. This requirement is meant to be expansive and AVA offers no principled reason to limit it.

Second, AVA mistakenly believes that the in-commerce element requires the consumer to have actual knowledge of the trademark's placement prior to purchasing a good. There is simply no such requirement in the statute. The point at which the consumer observes the trademark is not relevant to this inquiry. While the mechanics of a sale might be relevant had AVA challenged a different element of NNG's infringement claim, the issue before the Court is strictly whether or not NNG satisfied the third element—use in commerce.

AVA argues that NNG "does not offer a *single* case holding that the post-sale, post-activation appearance of a splash screen qualifies as placement of the mark 'on the goods.'" (Reply 11 [original emphasis].) AVA's argument is accurate. However, the Court notes that AVA failed to offer a *single* case where a court found that the "in commerce" element of an infringement claim was not satisfied in an analogous context. In light of the far-reaching nature of the "in commerce" element in an infringement claim and the lack of authority supporting AVA's position, the Court finds that NNG's First Amended Complaint fairly alleges the third element of an infringement claim.

### D. Fifth Cause of Action: Lanham Act Unfair Competition

AVA only raises one challenge to NNG's unfair competition claim. That challenge happens to be the exact same challenge it raised to NNG's infringement

claim—there is no allegation of any use "in commerce." (Mot. 21.) The Court incorporates all of its legal conclusions from the preceding section and rejects AVA's argument to NNG's fifth cause of action.

## V. CONCLUSION

The Court partially rejects AVA's challenge to NNG's second cause of action and fully rejects AVA's challenges to NNG's fourth and fifth causes of action. The Court dismisses NNG's theory of DCMA liability under 17 U.S.C. § 1201(a)(2) and 17 U.S.C. § 1201(b). The Court also dismisses NNG's third cause of action for trademark counterfeiting under the Lanham Act. For the reasons stated above, the Court hereby **GRANTS IN PART** and **DENIES IN PART** AVA's Motion to Dismiss. (ECF No. 46.)

**IT IS SO ORDERED.**

July 8, 2015

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**